# Commonwealth *v.* Van Sickle.

[MAY, 1845.]

A pig sty in a city is, *per se*, a nuisance.

It is no defence to an indictment for a nuisance in a city, that it has been conducted in the same place for a long series of years, as no nuisance can be justified by prescription; nor that it has become necessary to the community in which it is situated.

A nuisance in a city is not the less obnoxious to indictment from the fact that it is connected with a large and flourishing manufacture.

Where an indictment charged that the defendant fed a large number of hogs, with "slop, fermented grain, the offals and entrails of beasts, and other filth," by means whereof a nuisance, &c., was created, and the evidence showed that the hogs were fed exclusively on slop, it was held that there was no variance.

The act of assembly of 21st March, 1806, prescribing "that in all cases where a remedy is provided, or any thing directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted, or any thing done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect,"—does not destroy the remedy of indictment at common law, as to a nuisance in the city of Philadelphia, though such nuisance is in itself liable to be suppressed by the summary process afforded by the acts of assembly constituting the board of health.

THIS was an indictment for nuisance found in the court of Oyer and Terminer, &c., of the city and county of Philadelphia, at March term, 1845, and removed by certiorari to the supreme court. The indictment was in three counts, and was substantially as follows.

The first count charged that the defendant, near to divers public highways, &c., and also to the dwelling houses of divers citizens, &c., did unlawfully, and without sufficient cause, place in a certain messuage and tenement, &c., a great number of hogs, to wit, one thousand, and the said hogs then and there, &c., did feed and cause to be fed with the offals and entrails of beasts, and other filth, by means whereof divers noisome and unwholesome smells

and stenches, &c., were generated, &c., whereby the air was made insalubrious and offensive, &c., to the common nuisance, &c.   The second count was for the mere keeping of the hogs, with the averment that they were fed with "slop, fermented grain, the offals and entrails of beasts, and other filth," &c.; but was in other respects similar to the first.   The third count alleged the existence of a "certain house, commonly called the Pigs' Boarding House, and a certain yard to the same belonging," and proceeded to charge the defendant, in about the same phraseology as the first count, with keeping and feeding therein hogs in great numbers.

The evidence was voluminous, occupying more than a week in its rendition.

It appeared that the alleged nuisance consisted of a large establishment in the north-west corner of the city of Philadelphia, fronting on the river Schuylkill, and consisting in part of a large distillery, and in part of a frame edifice of considerable extent, with extensive outworks attached thereto, in which large numbers of hogs were fattened for the city market, and were fed chiefly from the refuse from the distillery.   The site was within the original limits of the city charter; and it appeared in evidence that it had been used for the purpose above mentioned, for more than thirty years.   At the time of the trial, and for a few years previous, the city had been rapidly extending in that direction, but at the time of the establishment of the alleged nuisance, the land in its vicinity had been for a number of years an unoccupied waste, which, in several instances, at different points, had been devoted to similar purposes. Several public institutions of great importance however had, from time to time, been erected in the immediate neighbourhood; and it was the alleged injury inflicted on these, as well as on the dwelling houses lately erected in the vicinity, that formed the principal ground of complaint.

It was shown by the prosecution, that the buildings in

[ Commonwealth *v.* Van Sickle.]

question were capable of accommodating as many as a thousand hogs, and that frequently as many as that number were there collected at one time; that in warm weather the stench was so intolerable, as to make it almost impossible to pass through the street on which the establishment opened, without nausea; and that when the wind was from the north-west, it was perceptible for a half mile towards the heart of the city; that the water of the Schuylkill was infected by the great quantities of filth and ordure which were discharged; that the value of property adjacent was diminished from ten to fifteen per cent., and that the comfort of the residents thereabout was materially affected by the effluvia.

On the part of the defence it was insisted, in the first place, that by the acts establishing the board of health, cognizance of nuisances of this character in the city and county of Philadelphia, was vested in that institution; and that this being the case, jurisdiction at common law was ousted by the operation of the act of 21st March, 1806.

It was shown also, that the establishment was conducted with as much regard to cleanliness as its character permitted; that there were and had been from time immemorial a number of smaller piggeries, to which the smell could be jointly attributed; and that it had been in existence long before the erection in the neighbourhood of the edifices, the value of which, it was alleged, were deteriorated.

In addition to this last branch of defence, it was urged, as a matter of law, that the business, as thus conducted, was essential to the city, and that the section of the city plot on which it was carried on, had been for so long a period devoted to this and similar purposes, as to give those who had more recently moved into it no just right of complaint. There was a variance also, it was insisted, between the indictment and the proof, the former of which averred the hogs to have been fed with the offals and entrails of beasts, and other filth, whereas the latter showed,

[Commonwealth *v.* Van Sickle.]

that the food was principally grain and slop. Several technical grounds of defence to the allegation of ownership in the indictment were also taken; but as they were negatived by the jury, and presented no question of law to the court, they are here omitted.

*Cuyler, F. Wharton,* and *Kane,* Attorney General, who addressed the jury for the commonwealth, argued that a pig-yard in a city is, *per se,* a nuisance, Bac. Abr. title Nuisance; *Queen* v. *Wigg,* 2 Salk. 460; 4 Rogers' Cr. Recorder, 26; and that if it be such, it cannot be protected from indictment, by its comparative usefulness, *R.* v. *Ward,* 4 Ad. & El. 384; by the existence of kindred offences around it, *R.* v. *Neil,* 2 C. & P. 485; or by its long continuance, *Elkins* v. *State,* 2 Humphrey, 543; *Com.* v. *Alburger,* 1 Whart. 469; *Com.* v. *Tucker,* 2 Pick. 44. The alleged variance as to the feed of the hogs, they urged, was immaterial, *People* v. *Townsend,* 3 Hill 479.

*Hood, Goodman, C. Gilpin,* and *F. W. Hubbell,* insisted: —That the business of the defendant was sanctioned by the long toleration of other more offensive trades in the neighbourhood, and that this was a defence in law. *R.* v. *Watts,* Moo. & M. 281. That it having been in existence before the population had reached that section of the city, those subsequently moving into the neighbourhood, had no just ground for complaint. *R.* v. *Neville,* Peake, N. P. 91; *R.* v. *Russell,* 6 B. & C. 566; *R.* v. *Cross,* 2 C. & P. 483. The necessity of an establishment like this, withdraws it from the operation of the law concerning nuisance. 1 Hawk. P. C. c. 75, s. 10. There is a clear variance between the indictment and the evidence, with respect to the alleged noxious food. 2 Russ. on Crimes, 793.

SERGEANT, J.—The establishment, which is the subject of this indictment, is alleged by the commonwealth to be

[Commonwealth *v.* Van Sickle.]

injurious to comfort and health. The defendant denies the truth of both these allegations. I need not press upon you at the outset the great importance of the issue to the city of Philadelphia, no part of which, either by the terms of its charter, or the necessities of its citizens, can be dedicated to the purposes of a nuisance. No man, or body of men has a right to occupy a portion of it, and declare that that shall be a Golgotha. Persons owning property in city lots are entitled by right to healthy air, and to a use of the public highways unimpaired by any adjacent nuisance. If this is a principle of general application to all cities, it is of peculiar moment to this, where the climate, during the summer months, is one of intense heat, and where, from the comparative lowness of the ground, corruption of the atmosphere may produce, as, in former times, it has produced, contagion and disease. It was for the purpose of checking such mischiefs, that the board of health was originally organized, and had that body done its duty in the present case, this trial would never have taken place.

The issue in this case narrows itself to a single point, and that point, if you believe the evidence on both sides, is one of law, on which it is your duty to receive the instructions of the court. Before reaching it, I will dispose of one or two grounds of defence which have been zealously urged as a bar to the indictment. In the first place, it is said that the defendant has acquired by lapse of time, and by original undisturbed possession of the precinct, a right to maintain the establishment in question against subsequent incomers. Such I deny to be the law. No one has a right to erect a nuisance, and then, after time has passed by, to say that he has a title to it by prescription. You will not understand me as saying that the distillery, stripped of the piggery attached to it, is in itself a nuisance. If, however, the whole concern, as jointly conducted, is such, no length of time can protect it.

Nor is the position, that the business conducted by the

F

[Commonwealth v. Van Sickle.]

defendant is necessary to the city, and should therefore be managed in convenient proximity to it, entitled to your consideration.   There are some trades so necessarily offensive, that merely carrying them on within the limits of a populous city, is in itself a nuisance.   The one which is the subject of this indictment, you will understand to be such. The law is perfectly well settled that a hog pen in a city is a nuisance; in the country, it is not so, though if a man should start a pig-sty opposite to his neighbour's door, the latter has a remedy; and in a city, which is one close neighbourhood, a fortiori, there must be a remedy also. You will take the law to be, that the keeping of pigs in a community like this, whether there be one or a thousand, is indictable.   Nor does the law recognise any distinction between the several points of a city dedicated to public use and comfort.   A pig-sty is as justifiable in the centre of a city as in its farthest corner.   If the one that is before you is sanctioned, a man will have a perfect right to open another opposite this court house.   You are not justified in singling out any section of a city for a purpose like this; if you do, you must open the whole of it to the same object.

It is said, by way of defence, that manufactures in a large community are to be protected, and that this was a manufacture.   Without touching the question, whether a manufacture, in the strict sense of the term, if offensive to the comfort of the community, can be removed by indictment, there is no pretence for saying, that a piggery is a manufactory at all.

The alleged variance between the indictment and the evidence, as to the feed of the hogs is immaterial, and in fact, you may treat the entire averment as to feed, as surplusage.

It is not necessary, as seems to have been supposed by the defence, for the commonwealth to have proved, that the material on which the hogs were fed, was in itself unwholesome and offensive.   If the hogs lived, they must

[ Commonwealth *v.* Van Sickle.]

have eaten, if they ate, they must have digested, if they digested, there must have been excrementation, and if so, there is no necessity for any dispute as to whether there was sufficient cause for complaint in the establishment conducted by the defendant.

Without considering, therefore, whether the discomfort and ill health experienced by the neighbourhood is to be attributed to this alone, or to this in conjunction with other causes, it is my duty to instruct you, that the fact of the nuisance being cognizable by the board of health, does not exclude the common law procedure by indictment, and that if you believe the evidence in the whole case, you must find the defendant guilty, in manner and form, as charged in the indictment.

A verdict of guilty being rendered by the jury, motions in arrest of judgment, and for a new trial, were made by the defence, embracing the principal points urged on the trial, but were ultimately abandoned, and the nuisance abated, without the case being taken to the court in banc.*

---

* In the case of the *Commonwealth* v. *Hutz*, tried in the court of quarter sessions of Philadelphia county, on the 13th November, 1849, before Judge Parsons, the doctrine of the foregoing case was applied to the rural districts of Philadelphia county. In that case the court charged the jury that "no man has a right so to occupy his property as to incommode or annoy his neighbour—nuisances can as well arise in the centre of a rural district as in a thickly settled town—the principle is the same every where; and if persons will locate their piggeries near a public road, they must take the necessary care to keep them in such a cleanly state as not to annoy the passengers along the road."